UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JEREMY EARNEST | * | CIVIL ACTION NO. |
| | * | 6:20-cv-00685 |
| | * | |
| VERSUS | * | |
| | * | |
| PALFINGER MARINE USA, INC.; | * | |
| SHELL OIL COMPANY; and | * | |
| ZURICH AMERICAN INSURANCE | * | |
| COMPANY | * | |

**********************************************************************

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff **Jeremy Earnest** ("Plaintiff") complains of Defendants **Palfinger Marine USA, Inc., Shell Oil Company** and **Zurich American Insurance Company**, ("Defendants") and would show the court the following:

## I.

### JURISDICTION AND VENUE

1.    Plaintiff asserts claims within Admiralty and Maritime jurisdiction of this Court within the meaning of Fed. R. Civ. Pro. Rule 9(h) and general maritime law pursuant to 28 U.S.C. § 1331.

2.    At the time of the subject incident Plaintiff was employed with Shell Oil Company and maintains his claims asserted here against

Shell Oil Company pursuant to 33 U.S.C. § 905(b), general maritime law, and/or the common law of Louisiana.

3.     This Court has jurisdiction pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* as Plaintiff was injured and sustained damages as a result of Defendants' conduct which occurred on Shell Oil Company's Auger platform which is located on the Outer Continental Shelf off the coast of Louisiana.  Plaintiffs' claims are maintained under the general maritime law and/or 33 U.S.C. § 905(b). Alternatively, Plaintiffs" claims are maintained under the common law of Louisiana.

## II.

## Parties

4.     Plaintiff **Jeremy Earnest** is a resident and citizen of Clarksdale, MS.

5.     Defendant **Palfinger Marine USA, Inc.** is a Delaware corporation that maintains its principal place of business in New Iberia, Louisiana.  Defendant is headquartered in Louisiana and maintains systematic and continuous conducts with the state such that it is at home in the state.  Defendant **Palfinger Marine USA, Inc.** has appeared and answered this lawsuit and thus may be served through its Counsel

of Record in this matter.

6.     Defendant **Shell Oil Company** is a foreign corporation authorized to do and doing business in the State of Louisiana. Defendant Shell Oil Company may be served with process through its registered agent for service: <u>CT Corporation System</u> at <u>3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816</u>.

7.     Defendant **Zurich American Insurance Company** is a foreign insurance company authorized to do and doing business in the State of Louisiana and is the currently known insurer for Defendant Palfinger Marine USA, Inc. Defendant **Zurich American Insurance Company** may be served with process through its registered agent for service: <u>Louisiana Secretary of State 8585 Archives Ave. Baton Rouge, Louisiana 70809</u>.

### III.

### <u>FACTS</u>

8.     This lawsuit is necessary as a result of personal injuries that Plaintiff sustained on or about June 30, 2019.  On or about this date, Plaintiff sustained severe injuries to his head, brain, neck, back,

shoulder, and knee while assigned to and working aboard the Shell Auger in the Gulf of Mexico.

9.      During a lifeboat test on Shell's Auger Lifeboat 6, the lifeboat's cable, hooks, and/or equipment malfunctions in several respects, including but not limited to the malfunction of the securing cables and/or hooks on the lifeboat that then fell from the Auger into the ocean, resulting in Plaintiff's injuries and damages.

10.     Defendants were responsible for inspections of the lifeboat and its cables, hooks, and appurtenances and owed Plaintiff a general duty to exercise reasonable care in these responsibilities. Defendants were negligent in failing to safely carry out these duties.

11.     On June 30, 2019 a safety exercise/test was being conducted on lifeboat 6 which was manufactured by Defendant Palfinger and owned by Defendant Shell Oil Company.

12.     Defendant Shell Oil Company, the owner of lifeboat 6 liable to Plaintiff pursuant to 33 U.S.C. § 905(b) *et. seq.* for vessel negligence and other failures in its capacity as a vessel owner. Defendant Shell Oil Company failed to provide Plaintiff with safe and adequate wire rope, hooks, mooring, davits, and/or other equipment or appurtenances

attached to Shell's lifeboat 6 and such negligence and/or failure to maintain lifeboat 6 was a proximate cause of Plaintiff's injuries and damages.

13.   Further, the control release cable and/or the release handle to one of the hooks on the lifeboat were owned and/or manufactured by Defendant Palfinger Marine USA, Inc. The release cable and/or handle to one of the hooks and/or the cable system were defective in design and/or composition.   Defendant Palfinger Marine USA, Inc. was negligent in failing to adequately inspect and notify Plaintiff of the dangerous and defective condition(s) to lifeboat 6's control cables and/or rigging found of which Defendants had actual and constructive knowledge of.

14.   Defendants were negligent failing to provide Plaintiff adequate rope, hooks, mooring, davits, and/or other equipment attached to lifeboat 6 and such negligence resulting in and was a proximate cause of Plaintiff's injuries and damages.

15.   Defendants are liable for the actions and omissions of their respective employees and agents that resulted in and were a proximate cause of Plaintiff's injuries and damages.

16.   Plaintiff reserves the right to assert additional fact as may emerge during discovery in this matter.

## IV.

## Causes of Action

## COUNT ONE: NEGLIGENCE & NEGLIGENCE PER SE

17.   The Outer Continental Shelf Lands Act provides for the application of state law as surrogate federal law.  As such, Plaintiff asserts all available claims and damages available under any Louisiana law along with his claims made pursuant to 33 U.S.C. § 905(b) against each of the named Defendants.

18.   Plaintiff further makes claims under the general maritime law of the United States against all Defendants.

19.   Defendants were negligent, negligent per se for the following reasons:

- Failure to provide a safe place to work;

- Failing to properly and adequately inspect, maintain, and/or repair the lifeboat, and/or its securing and/or lifting devices and/or appurtenances;

- Failing to properly follow protocols and polices, proper safety and control practices;

- Failing to warn Plaintiff of the defective nature of the lifeboat, and/or its securing and/or lifting devices and/or appurtenances;

- Failing to have instituted changes and repairs to the lifeboat, and/or its securing and/or lifting devices and/or appurtenances;

- Failing to conduct a safe lifeboat test;

- Failing to provide and deploy proper safety equipment;

- Failing to exercise due care and caution;

- Failing to provide adequate equipment;

- Failing to inspect and/or maintain its equipment;

- Failing to properly train its employees;

- Failing to provide adequate equipment;

- Failing to properly supervise its employees;

- Failing to conduct adequate maintenance;

- Failing to provide adequate instruction;

- Failing to implement adequate safety policies and procedures;

- Failing to ensure its safety systems were adequate and functional;

- Violating applicable Coast Guard, OSHA, BSEE and/or other regulations;

- Vicariously liable for the act(s) and omission(s) of their employee(s) and agent(s);

- Violating their Section 905(b) duties;

- Violations of Louisiana Civil Code Art. 2315;

- Violations of Louisiana Civil Code Art. 2317; and

- Other acts of negligence, negligence per se, and gross negligence which will be shown more fully at trial.

20.    Defendants conduct by way of act and/or omission as set forth herein was a proximate cause of Plaintiff's injuries and damages.

## COUNT TWO: PRODUCT LIABILITY

21.    Plaintiff asserts product liability claims under both Louisiana Law and the General Maritime Law of the United States.

22.    Defendants manufactured, designed, distributed, sold, inspected, and/or maintained the lifeboat, and/or its securing and/or lifting devices and/or appurtenances which was in use at Shell's Auger platform and which along with Defendants' conduct by way of act and/or omission was a proximate cause of the incident in question and Plaintiff's resulting injuries and damages.

23.    Defendants manufactured, designed, distributed, sold, inspected, and/or maintained the lifeboat, and/or its securing and/or lifting devices and/or appurtenances with design, manufacturing, and/or marketing defects.

24.    At all relevant times the lifeboat, and/or its securing and/or lifting devices and/or appurtenances were being used in the manner intended and foreseen by Defendants.

25.    The lifeboat, and/or its securing and/or lifting devices and/or appurtenances were defective and unsafe for its intended purposes at the time it left the control of Defendants.

26.    *Marketing Defect and Failure to Warn*: In addition, the lifeboat, and/or its securing and/or lifting devices and/or appurtenances

were designed, manufactured, distributed and/or sold with one or more marketing defects.

27.  There was an unreasonable risk in the intended or reasonably foreseeable use of such equipment.

28.  Defendants knew, foresaw, or should have known for foreseen the above risk.

29.  Defendants failed to adequately warn Plaintiff of the risks, failed to instruct Plaintiff of the above risks, and/or failed to adequately instruct Plaintiff how to avoid the dangers.

30.  The marketing defect(s) rendered the lifeboat, and/or its securing and/or lifting devices and/or appurtenances unreasonably dangerous.

31.  Defendants provided no warning that the lifeboat, and/or its securing and/or lifting devices and/or appurtenances would fail and injure or kill the users and persons in the proximity to it.

32.  *Design Defect*: In addition, the lifeboat, and/or its securing and/or lifting devices and/or appurtenances were designed, manufactured, distributed and/or sold with one or more design defects.

33.    Defendants designed the lifeboat, and/or its securing and/or lifting devices and/or appurtenances and knew of safer alternative designs that were available at the time of production.

34.    The safer alternative designs would have prevented or significantly reduced the above risks without substantially impairing the equipment's utility.

35.    The safer alternative designs were economically and technologically feasible at the time the Product left the control of Defendants.

36.    The design defect(s) rendered the lifeboat, and/or its securing and/or lifting devices and/or appurtenances unreasonably dangerous.

37.    A safer alternative design existed at the time the lifeboat, and/or its securing and/or lifting devices and/or appurtenances were manufactured. This alternative design would have prevented or significantly reduced the risk of injuries, without substantially impairing the lifeboat, and/or its securing and/or lifting devices and/or appurtenances' utility. Further, the alternative design was economically and technologically feasible.

-11-

38.   *Manufacturing Defect:* In addition, the lifeboat, and/or its securing and/or lifting devices and/or appurtenances were designed, manufactured, distributed and/or sold with one or more manufacturing defects.

39.   Defendants manufactured the lifeboat, and/or its securing and/or lifting devices and/or appurtenances and at the time deviated in the quality of construction, plan and/or specifications rendering the lifeboat, and/or its securing and/or lifting devices and/or appurtenances unreasonably dangerous.

40.   Further, the lifeboat, and/or its securing and/or lifting devices and/or appurtenances were defective in that they failed to conform to the product design and specifications of other similar systems, in that it was susceptible to failure, and thus rendering the lifeboat, and/or its securing and/or lifting devices and/or appurtenances unreasonably dangerous and capable of causing serious injury and death.

41.   The lifeboat, and/or its securing and/or lifting devices and/or appurtenances' design, manufacturing and/or marketing defect(s), which rendered the lifeboat, and/or its securing and/or lifting devices

and/or appurtenances unreasonably dangerous, along with Defendants' conduct by way of act and/or omission, were proximate causes of Plaintiff's injuries and damages.

## COUNT THREE: GROSS NEGLIGENCE

42.     Plaintiff is also entitled to punitive damages because the actions of Defendants were grossly negligent.    Defendant intentionally acted with flagrant and malicious disregard of Plaintiff's health and safety.  Defendants were subjectively aware of the extreme risk posed by the conditions which caused Plaintiffs' injuries and damages but did nothing to rectify them. The incident in question and Plaintiff's resulting injuries and damages were substantially certain to occur as a direct and proximate result of Defendants conduct and/or the product defects identified herein.  Defendants did so knowing that the conditions posed dangerous and grave safety concerns.  Defendant's acts and omissions involved an extreme degree of risk considering the probability and magnitude of potential harm to Plaintiff and others. Defendants had actual, subjective awareness of the risk, and consciously disregarded such risk by allowing Plaintiff to work under such dangerous conditions.

## COUNT FOUR: VIOLATION OF LOUISIANA CIVIL CODE ART. 2315

43.    Plaintiff makes a claim under Louisiana Civil Code Art. 2315 against all Defendants as a result of the injuries and damages sustained and caused by Defendants' negligent conduct. Defendants' conduct was in violation of their respective duties under Louisiana Civil Code Art. 2315 as set forth herein were a proximate cause of Plaintiff's injuries and damages.

## COUNT FIVE: VIOLATION OF LOUISIANA CIVIL CODE ART. 2317

44.    Plaintiff makes a claim under Louisiana Civil Code Art. 2317 against all Defendants as a result of the injuries and damages sustained and caused by a defective thing in one's custody. Defendants knew or should have known of the defective dangerous conditions in question yet failed to make safe said conditions.  These failures were a proximate cause of Plaintiff's injuries and damages.

## COUNT FIVE: LOUISIANA PRODUCT LIABILITY ACT CLAIM

45.    Plaintiff makes a claim against Defendant Palfinger under the Louisiana Product Liability Act, La. R.S. 9:2800.51 *et seq.* The control cables, rigging, securing hooks, winch, mooring and/or lifeboat cable system were unreasonably dangerous and the risks of using them

far outweighed the utility derived from them. Defendant Palfinger failed to provide adequate warnings regarding the hazard associated with use of the securing hooks.  Plaintiffs alleged defect in design, manufacture, and/or composition, breach of warranty, and failure to provide adequate and prudent warnings. These defects, conditions, and failures were a proximate cause of Plaintiff's injuries and damages.

46.   Plaintiff asserts any and all additional causes of action that may be available to him under the law.

## V.

## Damages

47.   As a result of said occurrences, Plaintiff sustained severe injuries to his body, which resulted in physical pain, mental anguish, and other medical problems.  Plaintiff has sustained severe pain, physical impairment, disability, disfigurement, discomfort, mental anguish, and distress.

48.   In all reasonable probability, Plaintiff's physical pain, physical impairment and mental anguish will continue indefinitely. Plaintiff has also suffered a loss of earnings in the past, as well as a loss of future earning capacity.

49.    Plaintiff has incurred and will incur pharmaceutical and medical expenses in connection with his injuries.   Plaintiff has been damaged in a sum far in excess of the minimum jurisdictional limits of this Honorable Court, for which he now sues.

## VI.

### RESERVATION OF RIGHTS

50.    Plaintiff reserves the right to prove the amount of damages at trial and to amend his Complaint to add additional claims.

## VIII.

### PRAYER

Plaintiff prays that this citation issue and be served upon Defendants in a form and manner prescribed by law, requiring that Defendants appear and answer, and that upon final hearing, Plaintiff have judgment against the Defendants, both jointly and severely, in a total sum in excess of the minimum jurisdictional limits of this Court, plus pre-and post-judgment interests, all costs of Court, exemplary damages, and all such other and further relief, to which he may show himself justly entitled.

**Dated: March 22, 2021**

Respectfully submitted,

ARNOLD & ITKIN LLP

_____

Noah M. Wexler
LA Bar Roll No. 34995
Ben Bireley
LA Bar Roll No. 37587
835 Louisiana Avenue
Baton Rouge, LA 70802
225-412-6348 (Telephone)
jaiteam@arnolditkin.com
e-service@arnolditkin.com
nwexler@arnolditkin.com
bbireley@arnolditkin.com

*Counsel for Plaintiff*