UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**JEREMY EARNEST**            CASE NO. 6:20-CV-00685 LEAD

**VERSUS**            JUDGE ROBERT R. SUMMERHAYS

**PALFINGER MARINE USA INC ET AL**      MAGISTRATE JUDGE CAROL B. WHITEHURST

**MEMORANDUM RULING AND ORDER**

The present matter before the Court is a supplemental memorandum in support of Motion for Summary Judgment filed by Shell Offshore [ECF No. 149]. The Court had previously entered a ruling and order granting in part and denying in part Shell Offshore's motion for summary judgment [ECF No. 89].[1] Shell contends that the Court's ruling did not address "the immunity afforded Shell offshore as an LHWCA [Longshore and Harbor Workers' Compensation Act] borrowing employer."[2] The Court will treat Shell's supplemental memorandum as a motion to reconsider the Court's ruling on summary judgment. As explained herein, the Court DENIES Shell's motion to reconsider.

In its motion for summary judgment, Shell argued that it could not possess the requisite knowledge to support Earnest's Louisiana state tort claims because none of its employees were present on the Auger platform. Rather, Shell contracted with SEPCO to support operations on the platform and SEPCO's employees were present on the platform at the time of the accident at issue. The Court concluded that there was a genuine question of material fact as to whether Shell Offshore was actually informed of the defective cable—*i.e.*, the June 11th Kemp report addressed

---

[1] ECF No. 140.
[2] ECF No. 149 at 1.

to Shell Offshore. The Court also concluded that, even if Shell Offshore did not receive the report, its agent, SEPCO, was made aware of the defect during the course of performing its duties to Shell Offshore under the SEPCO Services Agreement. An agent's knowledge may be imputed to that agent's principal if the agent is acting within the scope of authority and the knowledge relates to matters within the scope of that authority.³

To determine whether an employee is a "borrowed employee," courts consider the nine factors articulated by the Fifth Circuit in *Ruiz v. Shell Oil Company*:

1. Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?

2. Whose work was being performed?

3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4. Did the employee acquiesce in the new work situation?

5. Did the original employer terminate his relationship with the employee?

6. Who furnished tools and place for performance?

7. Was the new employment over a considerable length of time?

8. Who had the right to discharge the employee?

9. Who had the obligation to pay the employee?⁴

---

³ *See* RESTATEMENT (THIRD) OF AGENCY § 5.03 (2006); *In re Hellenic Inc.*, 252 F.3d 391, 395 (5th Cir. 2001); *see also Bell v. Demax Mgt. Inc.*, 824 So. 2d 490, 493 (La. App. 4th Cir. 2002) ("It is a well settled principle that knowledge possessed by the agent is imputed to the principal even if the agent neglected to specifically convey those facts to the principal.").
⁴ 413 F.2d 310 (5th Cir. 1969); *see also Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244–45 (5th Cir.), *amended on reh'g in part sub nom. Melancon v. Amoco Prods. Co.*, 841 F.2d 572 (5th Cir. 1988).

"Although no single one of these factors is decisive, the first is the most critical."[5] According to the Fifth Circuit, "[t]he central question in borrowed servant cases is whether someone has the power to control and direct another person in the performance of his work."[6]

Here, the Rincon Declaration submitted by Shell in support of its motion for summary judgment does not support its "borrowed employee" immunity argument.[7] Mr. Rincon was an operations manager for SEPCO on the Auger platform.[8] Mr. Rincon's testimony refutes at least four of the nine Ruiz factors, including the most important factor—control. Specifically, Mr. Rincon testified that:

> Mr Jeremy Earnest was at all pertinent times was [sic] an employee of SEPCO working as a mechanic on the Auger platform.
>
> The work of all SEPCO employees on or associated with Auger, including Mr. Earnest's work, was at all pertinent times controlled by SEPCO and its employees.
>
> The work of all employees on or associated with Auger, including Mr. Ernest's work, was at all pertinent times supervised by SEPCO and its employees.
> . . .
> SEPCO at all material times had the right to discharge SEPCO employees.
>
> SEPCO at all material times had the obligation to pay SEPCO employees.[9]

Shell appears to point to the agency relationship created under the Shell Offshore/SEPCO contract to argue that SEPCO's employees were Shell Offshore's borrowed employees. The same contract, however, specifically provides that Earnest and the other SEPCO employees on the Auger "remain employees of SEPCO and continue to be paid by and enjoy the benefits to which they are entitled

---

[5] *Mays v. Dir., Off. of Workers' Comp. Programs*, 938 F.3d 637, 642 (5th Cir. 2019) (applying *Ruiz* standard in an LHWCA case).
[6] *Hebron v. Union Oil Co. of Cal.*, 634 F.2d 245, 247 (5th Cir. 1981).
[7] Declaration of Jose Rincon, ECF No. 89-2.
[8] *Id.* at ¶ 1.
[9] ECF No. 89-2 at ¶¶ 9-11, 15-16.

as employees of SEPCO."[10] As the Court observed in its ruling on the motion for summary judgment, the contract does further provide that "[w]hen providing services hereunder SEPCO is authorized to act on SOI's behalf with the authority of an agent and to use the name of SOI when identifying on whose behalf such services are performed."[11] Shell Offshore, however, has not pointed to facts or legal authorities supporting its argument that this agency provision renders SEPCO's employees the "borrowed employees" of Shell Offshore.

In sum, for the reasons stated above, Shell Offshore's "borrowed employee" immunity argument does not support summary judgment in its favor on plaintiff's state law tort claims. Its argument, therefore, does not support reconsideration of the Court's summary judgment ruling. Accordingly, the Court DENIES the motion for reconsideration [ECF No. 149].

THUS DONE in Chambers on this 29th day of August, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[10] *Id.*
[11] *Id.*, at p. 2.